UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUNG LAM,<br><br>            Plaintiff,<br><br>      v.<br><br>CITY OF SAN JOSE, et al.,<br><br>            Defendants. | Case No. 14-cv-00877-PSG<br><br>**OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES**<br><br>**(Re: Docket Nos. 63, 64, 65, 66, 67, 68, 69, 70, 74, 75, 76, 77, 78, 79, 91**) |

Plaintiff Hung Lam and Defendants City of San Jose, Larry Esquivel and Dondi West have filed a total of fifteen motions in limine.[1] The parties have appeared at a pre-trial conference and supplemented their briefing with oral argument. As previewed at the hearing and explained further below, the court grants only a limited part of the requested relief.

**A.     Docket No. 74: Lam's MIL No. 1**

Lam moves to exclude testimony and other evidence about alleged drug and alcohol use by himself and Kevin Wade, Lam's boyfriend and an expected witness in this trial. Lam also moves to exclude evidence about his psychological condition before and during the shooting, including an involuntary two-day psychiatric detention that ended just before the incident. Lam argues that all of this is inadmissible character evidence under Fed. R. Evid. 404. The motion is GRANTED-IN-PART. Any alleged drug and alcohol use by Lam or Wade occurred days before the shooting and can have no bearing on the facts at issue. Testimony about that use is excluded. Evidence of the psychiatric detention, however, helps to explain Lam's behavior immediately before the

---

[1] *See* Docket Nos. 63, 64, 65, 66, 67, 68, 69, 70, 74, 75, 76, 77, 78, 79, 91.

1
Case No. 14-cv-00877-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES

incident at issue—when he may have been angry with Wade for allowing him to be detained—and during the encounter with West. While the prejudice to Lam may be substantial, the relevance is too great to justify exclusion. The court invites the parties to submit a limiting instruction detailing the purposes for which the jury may consider this testimony.

**B.      Docket No. 75: Lam's MIL No. 2**

Lam moves to exclude evidence about Lam's criminal prosecution under Cal. Penal Code § 148(a)(1) for resisting, obstructing or delaying a peace officer during the incident at issue and his subsequent no contest plea to that misdemeanor charge. Defendants do not object. The motion is GRANTED as unopposed.

**C.      Docket No. 76: Lam's MIL No. 3**

Lam moves to exclude testimony and other evidence pertaining to "suicide by cop," meaning the theory that Lam intentionally provoked West into shooting him. Defendants say they do not intend to introduce expert evidence about this theory. However, they do plan to elicit testimony that Lam was feeling suicidal before and during the subject incident. Defendants also object to any attempt to exclude them from making the argument that Lam approached West partly because he wanted to harm himself. The motion is GRANTED-IN-PART. Defendants may present evidence that Lam was suicidal and that he was suicidal in the presence of officers, but they may not argue that Lam was trying to commit suicide by cop.

**D.      Docket No. 77: Lam's MIL No. 4**

Lam moves under *Daubert v. Merrell Dow Pharms., Inc.*[2] to exclude testimony from Defendants' forensic expert Kenton Wong. Lam argues that the physical evidence contradicts Wong's opinions to the extent that his opinions are unreliable under *Daubert*. The motion is DENIED. The court agrees with Defendants that Lam's objections go to the credibility of Wong's testimony and not its admissibility. Lam can use cross-examination to explore the issues that he identifies with Wong's opinions.

---

[2] 509 U.S. 579 (1993).

### E.  Docket No. 78: Lam's MIL No. 5

Lam also moves under *Daubert* to exclude testimony from Elizabeth Loftus, Defendants' memory expert.  In her expert report, Loftus opined that witnessing a shocking event like Lam's shooting can cause retrograde amnesia, which would undermine the eyewitness testimony that Lam intends to offer.  The motion is DENIED.  As with the motion to exclude Wong's testimony, the issues that Lam identifies are more appropriate for exploration during cross-examination.

### F.  Docket No. 79: Lam's MIL No. 6

Lam moves to exclude evidence of official findings, either by the Santa Clara County District Attorney or by any other government agency, that West was justified in shooting Lam.  Defendants say they have no intention of introducing any such report.  The motion is GRANTED.

### G.  Docket No. 63: Defendants' MIL No. 1

Defendants move under *Daubert* to exclude the testimony of Gregg Stutchman, Lam's expert in the field of forensic analysis of audio and video recordings.  Stutchman has analyzed the audio recording of a conversation between West and a police sergeant who arrived on the scene after the shooting.  In particular, Stutchman claims that he was able to enhance an otherwise inaudible portion of the recording and use aural comparison analysis to determine exactly what West said.  Defendants object that "hearing is within the ability and experience of the trier of fact,"[3] so that Fed. R. Evid. 702 precludes Stutchman from offering any purportedly expert opinion on what he was able to hear from an enhanced recording.  Furthermore, Defendants cast doubt on the reliability of Stutchman's methods.  The court GRANTS the motion IN-PART.  Stutchman may explain how he enhanced the audio and play the enhanced audio to the jury.  He also may play the comparison sounds, which mostly include clips from West's deposition, that he used when performing his analysis.  However, he may not testify as to what he believes West said.

### H.  Docket No. 64: Defendants' MIL No. 2

Defendants move to exclude Lam from offering any evidence or inference that West and

---

[3] *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995).

the other officer on the scene, Dan Phelan, communicated with each other through a police attorney before they made their official statements in the Officer Involved Shooting investigation. In fact, West and Phelan disclosed at deposition that they did talk to the same attorney, Joseph Lucia, before their OIS interviews. Lam points out that the officers' accounts of the incident are largely consistent with each other but differ dramatically from those of the other witnesses. Lam suggests that the only plausible explanation is that they concocted their stories with Lucia's aid. The motion is GRANTED. Although the fact that West and Phelan talked to Lucia does not implicate the attorney-client privilege, Defendants cannot respond effectively to this line of argument without breaching that privilege.

### I.     Docket No. 65: Defendants' MIL No. 3

Defendants move to limit Lam's police practices expert to opining only about hypothetical situations and not about the facts of the case. Because the facts of the incident are in dispute, Defendants argue that allowing an expert to opine about her version of the facts would intrude into the province of the jury. Lam responds that allowing experts to frame their opinions in terms of the facts of the case is clearer and more direct than forcing them to speak only in hypotheticals. The motion is DENIED. As Lam points out, the advisory committee notes to Fed. R. Evid. 704 encourage expert opinions on ultimate issues. An expert could not opine on an ultimate issue without relying on a particular version of the facts. Defendants can and should cross-examine Lam's police practices expert on the facts on which she relies.

### J.     Docket No. 66: Defendants' MIL No. 4

Defendants move to exclude evidence related solely to Lam's claims against the City of San Jose under *Monell v. Department of Social Services*,[4] on which the court has granted summary judgment in Defendants' favor.[5] Lam argues that West's vision and shooting accuracy at the range are relevant to the issue of whether she perceived Lam's behavior correctly and to whether

---

[4] 436 U.S. 658 (1978).

[5] *See* Docket No. 82 at 9-10.

4
Case No. 14-cv-00877-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES

1   she acted reasonably in not wearing glasses during the encounter.  The motion is GRANTED.
2   Lam is correct, of course, that testimony on West's visual acuity will help the jury decide whether
3   she was negligent, and as such it is admissible.  Lam also may introduce testimony of West's
4   training because it bears on what she did during the encounter and whether it was reasonable.  But
5   Defendants' motion pertains to "evidence that relates *only* to *Monell* issues."[6]  By definition, that
6   evidence is irrelevant to the claims remaining in this case.

### K. Docket No. 70: Defendants' MIL No. 5

Defendants move under *Daubert* to exclude testimony from Carol Hyland, a life care planner who has produced a report estimating the medical expenses that Lam will incur as a result of his injuries.  Defendants claim that her methodology is flawed because she relies essentially on "rack rates," or sticker prices, for medical care instead of the reasonable value of medical services, as required by California law.[7]  The court DENIES the motion.  To the extent Hyland's conclusions are based on unreasonably high medical expenses, Defendants can highlight this flaw during cross-examination.  It does not render her entire opinion unreliable.

### L. Docket No. 69: Defendants' MIL No. 6

Defendants raise the same objections to the testimony of Richard Shaw, a psychiatrist who has expressed opinions about the cost of Lam's future psychiatric care.  The court DENIES the motion for the same reason.

### M. Docket No. 67: Defendants' MIL No. 7

Defendants move to exclude the testimony of Robert Johnson, Lam's economic expert, because he incorporates Hyland's methodology and has no opinion on whether her report is accurate.  Defendants also move to preclude Johnson from testifying about the opinion of Erik Volk, Defendants' economic expert, because Johnson testified at deposition that he never saw Volk's report.  The motion is GRANTED-IN-PART.  Because Lam does not oppose Defendants'

---

[6] Docket No. 66 at 2 (emphasis added).

[7] *See Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 555 (2011).

second basis for exclusion, Johnson may not testify about Volk's opinion.  However, Johnson may incorporate Hyland's opinions, and Defendants may cross-examine Johnson on whether he has any opinion on her methodology or the appropriateness of her report.

N.      **Docket No. 68: Defendants' MIL No. 8**

Defendants move to exclude the testimony of Alex Barchuk, a physician that Lam has retained as a medical expert, on certain topics.  Lam does not oppose the motion except as to whether Barchuk can testify about the reasonableness of the medical care costs that Hyland itemized.  The motion is GRANTED.  Barchuk testified in his deposition that he typically does not assess the cost of medical care and that he has not spoken to Hyland about her opinions.[8]  His opinions on the reasonableness of Lam's medical costs would not help the jury.

O.      **Docket No. 91: Defendants' MIL No. 9**

Defendants move to bifurcate the trial between liability and damages issues.  They further seek to separate the issue of punitive damages.  Lam does not oppose, but he notes that the relevance of evidence must be determined separately for each phase.  The motion is GRANTED.

P.      **Additional Stipulations and Disputes from Pre-Trial Conference**

- Either party may bring a Fed. R. Civ. P. 50(a) motion orally if it so chooses.  In the event that a party or the court feels that further briefing is necessary, the party can request a briefing schedule.  In the event either party wishes to bring a Fed. R. Civ. P. 50(b) motion following the close of trial, the parties shall follow the procedures laid out in the Civil Local Rules.[9]

- One representative of the City of San Jose may attend the entirety of the trial.  Witnesses other than experts, the individual parties and the City's representative will be sequestered.

- Each side will disclose to the other side each witness it intends to call live (in the order of call) and by deposition by 7:00 PM at least two days before the day of trial during which the witness will testify, except that witnesses to be called on a Monday must be disclosed by noon on the preceding Friday.  By 6:00 PM the night before a party intends to call a witness, it must provide the other side and the court with all the exhibits and

---

[8] *See* Docket No. 68 at 34:11-35:4.

[9] *See* Civ. L.R. 7.

- demonstrative evidence it intends to use with that witness.  By 8:00 PM that same night, the other side must state any objections thereto or they are deemed waived.  The parties will attempt to meet and confer that night or in the morning to resolve such objections.

- The parties will exchange all demonstratives, visual aids and evidence that they plan to refer to in opening statements by 4:00 PM on November 23, 2015.  The other side must raise any objections to such use by 8:00 PM on November 30, 2015, or they are deemed waived.

- For the designated deposition transcripts, objections need not be read to the jury, and they can be edited out of the transcript or video clips for hearing or viewing by the jury.

- The parties may briefly introduce each witness at the beginning of each direct examination.  Each witness may be questioned by only one attorney per side.

- All disputes about exhibit admissibility or propriety of demonstratives will be addressed the morning that the exhibit or demonstrative is to be used at trial.

- During voir dire, each party will have up to one hour to ask questions of the jury.  The scope of such questions will be limited to jurors' responses to the court's line of questioning and jurors' responses to the juror questionnaire.

- The parties will admit exhibits by agreement where possible.  Otherwise, exhibits must be used with a witness to be admitted into evidence.  Each party will move to admit exhibits as they are presented to the witness, during a break or at the end of the trial day.

- The court will pre-instruct the jury before opening statements.

- The jury may submit jury questions to the court following the conclusion of each witness's testimony.  After reviewing the questions posed and confirming that they are legally permissible, the court will ask any permissible questions to the witness on behalf of the jury.

- The parties shall consult with the clerk's office to arrange the use of the juror questionnaire as proposed at Docket No. 71, with the following additional questions:
    - "How is your health?" (blank)
    - "Is sitting for long periods of time difficult for you?" (Yes/No) "If yes, please explain:" (blank)
    - "Do you find it difficult to see or hear?" (Yes/No) "If yes, please explain:" (blank)
    - "Do you have any chronic diseases?" (Yes/No) "If yes, please explain:" (blank)
    - "Do you take any medications regularly?" (Yes/No) "If you answered yes to the previous question, do the medications make you tired or drowsy or might they interfere with your ability to concentrate for long periods of time?" (Yes/No)
    - "Is there anything that may affect your ability to serve as a juror in this case?" (Yes/No) "If yes, please explain:" (blank)
    - "Is there any reason why you should not serve on this jury, why you would be unable to do so, or why jury duty would present a serious hardship?" (Yes/No) "If yes, please explain:" (blank)

7
Case No. 14-cv-00877-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES

- o "Why would you be a good juror in a case like this?" (blank)
- o "What else should we know about you?" (blank)
- o "Please circle any of the following with whom you are acquainted:" This question should be followed by a list or table containing the names of the undersigned, every attorney for each side and every potential witness that has been identified thus far.

- Each trial day will begin at 9:00 AM and end at 4:30 PM, with a one-hour lunch break. If any preliminary evidentiary issues should arise on a particular day, counsel shall apprise the court and appear at 8:00 AM to address these issues.

- Jurors will arrive and fill out the juror questionnaire on Monday, November 30, 2015. Counsel shall make copies of the jurors' responses and share them with each other and with the court as early as possible on November 30. Voir dire will commence at 9:00 AM on Tuesday, December 1, 2015. Opening statements will commence at 1:30 PM on December 1 or as soon as possible after a lunch break.

- Jury instructions and the verdict form will be addressed at the jury charge conference to be held during trial. No later than November 17, 2015, the parties may file amended proposed verdict forms to the extent that their scope has changed in light of the court's rulings on summary judgment.

**SO ORDERED.**

Dated: November 10, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

8
Case No. 14-cv-00877-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE AND OTHER PRE-TRIAL ISSUES