FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HUNG LAM, individually, through his next friend, Kathy Lam, *Plaintiff-Appellee,* <br><br> v. <br><br> CITY OF SAN JOSE, a municipal corporation; DONDI WEST, individually and in her official position as a San Jose Police Officer; LARRY ESQUIVEL, in his capacity as Chief of Police for the City of San Jose, *Defendants-Appellants.* | No. 16-16052 <br><br> D.C. No. 5:14-cv-00877-PSG <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Paul S. Grewal, Magistrate Judge, Presiding

Argued and Submitted June 15, 2017
San Francisco, California

Filed September 5, 2017

Before:  Mary M. Schroeder, D. Michael Fisher,[*]
and N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's judgment, entered following a jury verdict, in favor of plaintiff in an action brought under 42 U.S.C. § 1983 and state law alleging that a police officer used excessive force when she shot plaintiff in the back during a response to a 911 call, rendering plaintiff a paraplegic.

The panel held that the district court did not abuse its discretion by denying the officer's motion for a new trial because the evidence presented at trial provided a reasonable basis to support the jury's verdict.  Nor did the district court abuse its discretion by failing to give to the jury special interrogatories, a deadly force instruction, or an instruction regarding officer tactics. The panel held that the district court has broad discretion in the formulation of jury instructions, and the instructions adequately covered the issues presented, correctly stated the law, and were not misleading.  Finally,

---

[*] The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

the panel declined to reach the officer's argument relating to qualified immunity, because she did not preserve the defense for appeal by filing motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50.

## COUNSEL

Clifford S. Greenberg (argued), Senior Deputy City Attorney; Nora Frimann, Assistant City Attorney; Richard Doyle, City Attorney; Office of the City Attorney, San Jose, California; for Defendants-Appellants.

Benjamin Nisenbaum (argued), Ayana Curry, and John L. Burris, Law Offices of John L. Burris, Oakland, California, for Plaintiff-Appellee.

## OPINION

N.R. SMITH, Circuit Judge:

This case arises from a shooting that occurred when San Jose Police Department Officer Dondi West responded to a 911 dispatch regarding two people arguing and one of them—Hung Lam—having a knife. Officer West arrived on the scene and attempted to subdue Lam (the details of which are disputed), which resulted in Officer West shooting Lam in the back and rendering him a paraplegic. Lam sued Officer West, the City of San Jose, and the San Jose police chief for violations of his state and federal rights. A jury found Officer West used unreasonable force against Lam, interfered with the exercise of Lam's constitutional rights, and acted

negligently toward Lam. However, the jury also found Officer West did not commit battery.

The district court did not abuse its discretion by denying Officer West's motion for a new trial, because the evidence presented at trial provided a reasonable basis to support the jury's verdict. Nor did the district court abuse its discretion by failing to give to the jury special interrogatories, a deadly force instruction, or an instruction regarding officer tactics. The district court has broad discretion in the formulation of jury instructions, and the instructions adequately covered the issues presented, correctly stated the law, and were not misleading. Finally, we do not reach Officer West's argument relating to qualified immunity, because she did not preserve the defense for appeal.

## FACTS

Two days before the incident at issue, Lam began behaving erratically. He spent much of the day in the driveway of his San Jose home that he shared with his boyfriend, Kevin Wade. He refused to go into their house, because he was afraid someone might be inside. Lam eventually called the police himself and was placed under an involuntary psychiatric hold at a nearby hospital. The hospital released Lam two days later.

After Lam was released from the hospital, he and Wade stopped at their house on the way to visit Lam's family. When they arrived at their house, Lam started to act strangely again. He picked up a knife and told Wade that someone was in the house. Wade walked outside and Lam followed him. Wade attempted to convince Lam to give him the knife, but Lam refused and threatened to cut himself. Wade flagged

down their next-door neighbors, Herman and Helen Anderson, and asked them to call the police. Herman Anderson went inside his house to call the police. Helen Anderson ("Anderson"), a retired deputy sheriff, walked toward Lam (but remained on her lawn at a distance she estimated to be 10 to 15 feet from Lam) and began talking with him. The conversation between Lam and Anderson was calm, but Lam was still agitated and periodically motioned as if to cut his wrist with the knife.

Herman Anderson called dispatch and told them that two people were arguing, and one of them had a knife. Upon receiving the dispatch, the dispatcher informed Officer West about the call and told her that a retired sheriff's deputy was talking to the man with a knife. A few moments later, Officer West arrived at the scene. At this point, the stories diverge.

Helen Anderson had a clear view of the entire incident. She testified that, when Officer West arrived at the scene, she had her gun drawn in a shooting position and she quickly approached the property line of the Andersons' lawn and Lam's lawn. Officer West ordered Anderson to move back (and she did, approximately eight to ten feet) and ordered Lam to drop the knife and get down on the ground. Lam never dropped the knife but threw a cell phone on the ground. Lam, who was standing in the middle of his lawn approximately 10 to 15 feet away from Officer West, then turned his back to Officer West and started making motions with the knife toward his stomach, as if he were stabbing himself. Immediately, Officer West shot Lam in the back twice in rapid succession, and Lam fell to the ground. Photographs introduced at trial confirm that Lam was shot in the back. Anderson testified that Lam did not move after Officer West arrived at the scene. However, the photographs

introduced at trial depict Lam's clothes were cut off near the tree, with Lam's cell phone approximately 14 feet away from Lam's clothes. Anderson also testified that the shooting happened within approximately 10 to 15 seconds of Officer West exiting her vehicle. However, the police communications tape demonstrates that over a minute elapsed between when Officer West announced that she arrived at the scene and when the officers announced that shots were fired. Anderson never saw Officer West move into Lam's yard where a tree and shrubbery were located, nor did she see Officer Phelan on the scene until after Lam was shot.

Officer West recalled the incident very differently. She testified that, when she arrived at the scene, Lam had a knife to his throat and stood approximately an arms length away from Helen Anderson. Officer West moved quickly toward Lam with her gun drawn, ordering that Anderson move back and that Lam drop the knife.[1] As Officer West approached the property line between Anderson's yard and Lam's yard (approximately 15 feet away from Lam), Lam threw an item to the ground. Officer West believed it was the knife (though she later learned it was a cell phone). Just after Lam dropped the item on the ground, a second officer, Dan Phelan, arrived on the scene in his patrol car. Believing Lam was unarmed, Officer West and Officer Phelan approached Lam to subdue him. When Officer West was within three or four feet of Lam, she saw Lam pull a knife out of his waistband. She yelled "knife" and backed away from Lam. Lam walked away from Officer West and looked as if he were pushing the knife into his stomach. Officer Phelan ran back to his patrol car to

---

[1] Officer West testified that she ordered Lam to drop the knife approximately 15 times, using different words and different tones, in order to get Lam to respond.

retrieve a less lethal weapon (a "40") that shoots rubber bullets.

Officer West and Lam were still approximately 15 feet apart. With the knife out, Lam then turned to face Officer West and started taking small steps toward her—at times turning to walk backwards while looking at her over his shoulder and at times facing her. Officer West pointed her gun at Lam and started backing away from him. She knew there was a tree in the yard and continued backing up toward the tree, intending to use it for cover. Lam continued to slowly walk backwards toward Officer West with the knife in his right hand. Officer West backed up past the tree and then moved to position the tree between herself and Lam. As she moved behind the tree, her right foot became stuck. Officer West looked down, but could not tell what was holding her foot. As she looked up at Lam, she saw that Lam was closer to her and was starting to turn toward her with the knife still in his hand. Officer West believed that, if she attempted to move her stuck foot, she would fall and Lam would stab her. As Lam was facing Officer West approximately 10 feet away, Officer West fired her gun at Lam, but did not hit him. Lam then turned his back toward Officer West and walked backwards toward her for two or three more steps, while looking at her over his shoulder. Officer West fired again, this time hitting Lam in the back. Lam fell immediately on the ground toward Officer West, and rolled on his back.

Wade and Officer Phelan also offered their accounts at trial. According to Wade, when Officer West arrived on the scene, she pointed her gun at Lam and yelled at Lam to drop the knife. Lam pointed the knife at his stomach and told Officer West that if she got close to him, he would hurt himself. Lam then turned his back to Officer West. Wade

started to run across the street. He saw Officer Phelan park his patrol car, walk a short distance toward the Andersons' yard, and immediately return to the patrol car to retrieve the 40. At some point, Wade looked back and saw Lam standing in the center of his yard with his back facing Officer West and Officer West in the Andersons' yard pointing her gun at Lam. By the time Wade reached the other side of the street, two shots had been fired. Wade testified that Lam never moved from the middle of his yard, and Officer West stayed close to the Andersons' yard.

Officer Phelan testified that, when he arrived on the scene, Lam and Officer West stood 15 feet apart. Lam had his hands raised in the air and they were empty. Officer Phelan got out of his car and ran to assist Officer West in the yard. Officer West told Officer Phelan that Lam dropped a knife. Both officers, with their guns pointed at Lam, ordered Lam to get on the ground. Lam turned around and shuffled his feet but stayed in the same general area. Officer West then told Officer Phelan that Lam now had a knife, and Officer Phelan retreated to his patrol car to retrieve a 40. While stopping to look back briefly toward the house, Officer Phelan saw Lam trying to impale himself with the knife. At that point, Officer Phelan broadcast over the police radio that he was "getting the 40" and that Lam was "stabbing himself." After retrieving and loading the 40, which took approximately 30 seconds, Officer Phelan started to run back to the yard and saw Officer West standing near the tree and facing Lam, approximately five to seven feet apart. Because Officer Phelan approached from directly behind Officer West, his view was obstructed and he could not fully see Lam or tell whether Lam was moving toward Officer West. Officer Phelan could tell that Lam was facing Officer West during the first shot, but twisting away from Officer West during the second shot. Lam

testified at trial, but had no recollection of speaking to Anderson before the shooting, the officers arriving on the scene, or how the shooting occurred.

## PROCEDURAL HISTORY

Lam filed suit against Defendants for (1) excessive force and malicious prosecution under the Fourth Amendment; (2) state law assault and battery; (3) state law intentional infliction of emotional distress, (4) violation of the Bane Act (California state law action for intentional interference with civil rights by threats, intimidation, or coercion); (5) state law negligence, and (6) improper training in the use of force against persons who appear suicidal under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Defendants moved for summary judgment based on qualified immunity, arguing Officer West did not violate Lam's Fourth Amendment rights and there was no case law that prohibited her actions. Finding that the evidence, viewed in the light most favorable to Lam, demonstrated a constitutional violation of clearly established law, the district court denied Officer West's motion based on qualified immunity.[2] Officer West never appealed the denial of qualified immunity.

In her trial brief, Officer West requested that the district court submit special interrogatories to the jury so that the court could rule on Officer West's entitlement to qualified immunity pursuant to a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). However,

---

[2] The district court granted summary judgment to the police chief and the City of San Jose on the *Monell* claim. The remaining claims proceeded to trial against Officer West.

Officer West did not submit proposed special interrogatories to the district court, and the court did not include any special interrogatories in the jury instructions.

The case proceeded to a jury trial. The jury unanimously found (1) Officer West used unreasonable force against Lam; (2) Officer West did not commit battery; (3) Officer West violated the Bane Act; and (4) Officer West was negligent[3] with regard to the shooting.[4] The jury awarded Lam $11.3 million in economic and noneconomic damages. Officer West did not file Rule 50(a) or (b) motions.

Officer West filed a motion for a new trial under Federal Rule of Civil Procedure 59, arguing the verdict was not supported by the clear weight of the evidence; the jury was improperly instructed on Fourth Amendment liability; and the district court's failure to submit special interrogatories to the jury deprived Officer West of a qualified immunity determination. The district court denied Officer West's motion in full. Officer West appealed, arguing the district court erred by concluding the verdict was supported by the clear weight of the evidence, the excessive force instruction did not adequately explain the law, and the district court abused its discretion by failing to submit special interrogatories to the jury. For the reasons explained below, we affirm.

---

[3] The jury apportioned 65% fault to Officer West and 35% fault to Lam.

[4] The jury was not instructed on the intentional infliction of emotional distress claim or the malicious prosecution claim.

# DISCUSSION

## I.

"We review a district court's denial of a motion for a new trial under Federal Rule of Civil Procedure 59(a) for an abuse of discretion." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 728 (9th Cir. 2007). This review permits us to reverse the district court only if it "reaches a result that is illogical, implausible, or without support in the inferences that may be drawn from the record." *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010). "The abuse of discretion standard requires us to uphold a district court's determination that falls within a broad range of permissible conclusions, provided the district court did not apply the law erroneously." *Id.* We have recognized the "limited nature of our appellate function" in reviewing the district court's denial of a motion for a new trial, *id.*, and we will generally "not reverse the denial of a new trial motion if there was some 'reasonable basis' for the jury's verdict," *Molksi*, 481 F.3d at 729. In sum, "where the basis of a Rule 59 ruling is that the verdict is not against the weight of the evidence, the district court's denial of a Rule 59 motion is virtually unassailable. In such cases, we reverse for a clear abuse of discretion only when there is an *absolute absence of evidence* to support the jury's verdict." *Kode*, 596 F.3d at 612 (quotation marks and citation omitted).

Officer West argues the district court erroneously denied her motion for a new trial, because there is no evidence to support the jury's verdict. Specifically, Officer West contends that Anderson's testimony—which is the only evidence that supports the jury's verdict—is not entitled to *any* weight, because it is inconsistent with the physical evidence that was

presented at trial. Officer West does not argue the district court misapplied the law.

The district court did not abuse its discretion by denying Officer West's motion for a new trial. The district court acknowledged Anderson's testimony could not, in some respects, be reconciled with the physical or documentary evidence. It nevertheless concluded that the jury was entitled to give Anderson's testimony weight, because Anderson perceived the entire incident and some physical evidence supported Anderson's testimony. Given the standard of review for the denial of a motion for a new trial, we agree.

It is true Anderson's testimony, regarding the timing of the incident and the precise location of each person, is difficult to reconcile with some of the physical evidence that was presented at trial. However, none of the physical or documentary evidence or expert testimony provides incontrovertible proof that Anderson's version of the incident—that Officer West shot Lam in the back when Lam was not threatening Officer West—was impossible. Additionally, portions of Wade's testimony corroborates Anderson's testimony. Despite some inconsistencies in the details of Anderson's testimony, her testimony nonetheless provides substantial evidence upon which the jury could have reached its verdict.

We decline to assess Anderson's credibility on appeal, *Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir. 2003) ("It is not the courts' place to substitute our evaluations for those of the jurors."), and we also decline Officer West's invitation to reweigh the evidence, *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1372 (9th Cir. 1987) ("[W]e cannot weigh the evidence for

ourselves . . . ."). Our role is not to overturn the verdict merely because the jury could have reached the opposite conclusion based on the evidence. *See id.* Instead, we look only to whether the district court's conclusion "was outside of a broad range of permissible conclusions." *Kode*, 596 F.3d at 613. It was not. The jury's verdict is supported by a percipient witness's testimony, which is substantial evidence upon which the district court's denial of the motion for a new trial can be affirmed.

## II.

We review de novo whether a district court's jury instructions accurately state the law, and we review for abuse of discretion a district court's formulation of jury instructions. *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011). "[J]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *Id.* (quoting *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005)).

Officer West argues that she is entitled to a new trial, because the jury instructions were erroneous in three regards: (1) the district court did not give special interrogatories to the jury; (2) the district court did not give a deadly force instruction to the jury; and (3) the district court erred by failing to instruct the jury that an officer's "bad tactics" are insufficient to establish constitutional liability.

## A.

Officer West first argues that, in qualified immunity cases involving disputed issues of material fact (like here), the district court is *required* to give special interrogatories to the

jury. She is mistaken as to the precedent in our circuit. Instead, "[t]he decision 'whether to submit special interrogatories to the jury is a matter committed to the discretion of the district court.'" *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999) (alteration omitted) (quoting *Acosta v. City and Cty. of San* Francisco, 83 F.3d 1143, 1149 (9th Cir. 1996), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)); *Cancellier v. Federated Dep't Stores*, 672 F.2d 1312, 1317 (9th Cir. 1982). The district court found special interrogatories were unnecessary. In its discretion, the district court reasoned that, if the jury found Anderson's version of the facts to be true, then Officer West would not be entitled to qualified immunity, because it is a violation of clearly established law for an officer to use deadly force against someone who poses no threat of serious harm to the officers or others. The district court did not abuse its discretion by declining to give special interrogatories based on this rationale.

We recognize that other circuits have encouraged or required district courts to use special interrogatories in qualified immunity cases involving disputed issues of material fact. However, Officer West has provided no authority from this circuit supporting the proposition that special interrogatories are *required* for the purpose of evaluating a post-verdict qualified immunity defense. Additionally, Officer West failed to submit proposed special interrogatories to the district court and provides no explanation, consistent with our case law, as to how the district court abused its discretion by declining to give special interrogatories.

## B.

Officer West next argues the district court's instructions failed to convey the proper standards as to objectively reasonable force. Specifically, Officer West argues that *Tennessee v. Garner* established a constitutional justification for the use of deadly force—an officer can use deadly force if she is confronted with an imminent risk of death or serious bodily injury—and that, by failing to instruct the jury on this specific justification, the court left the jurors inadequately informed as to the law. We disagree.

In *Tennessee v. Garner*, the Supreme Court addressed the reasonableness of an officer's use of force when the officer shot an unarmed fleeing suspect. 471 U.S. 1, 3–6 (1985). The Court concluded that deadly force is reasonable if "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 3. Following *Garner*, our court held that, "in a police shooting case . . . , where there was no dispute that deadly force was used, the district court abuses its discretion by not giving a *Garner* deadly force instruction." *Monroe v. City of Phoenix*, 248 F.3d 851, 860 (9th Cir. 2001), *overruled by Acosta v. Hill*, 504 F.3d 1323 (9th Cir. 2007). We noted that a general "excessive force instruction is not a substitute for a *Garner* deadly force instruction." *Id.* at 859.

However, the Supreme Court's more recent decision in *Scott v. Harris* rejected the view that *Garner* created a special rule in deadly force cases. *See* 550 U.S. 372, 382 (2007). In *Scott*, the plaintiff argued that the preconditions set forth in *Garner* (including whether the suspect posed an immediate threat of serious physical harm to the officer or others) should

determine whether the use of deadly force was appropriate. *Id.* at 381–82. The Supreme Court rejected that approach, reasoning, "*Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.'" *Id.* at 382. Rather, the Court explained, "*Garner* was simply an application of the Fourth Amendment's 'reasonableness' test to the use of a particular type of force in a particular situation." *Id.* (internal citation omitted).

We have since recognized that *Scott* overruled our prior precedent and district courts are no longer required to give a separate deadly force instruction. *See Acosta*, 504 F.3d at 1324. Therefore, Officer West's argument that the district court was required to give a separate deadly force instruction fails as a matter of law.

## C.

Officer West argues the district court erred by failing to give an instruction that explained to the jury that Fourth Amendment liability cannot be premised solely on an officer's "bad tactics." Excessive force claims "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[P]roper application [of the reasonableness test] requires careful attention to the facts and circumstances of each particular case." *Id.* at 396. The events leading up to the shooting, such as the officer's tactics, are encompassed in those facts and circumstances.

Following the pattern jury instructions, the district court submitted the case to the jury under the general rubric of reasonableness. The district court's charge covered the

appropriate legal standard and left counsel more than enough room to argue the facts in light of that standard. We cannot hold that the district court abused its discretion by declining to single out one factor in the reasonableness inquiry, when the instructions properly charged the jury to consider all of the circumstances.

## III.

Officer West contends the district court deprived her of the right to a qualified immunity determination. We need not reach the question of qualified immunity, because Officer West did not preserve the issue for appeal.

Defendants have the burden to assert qualified immunity, which is an affirmative defense that must ordinarily be pleaded in the answer. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). However, the "defendants may raise an affirmative defense for the first time in a motion for summary judgment . . . if the delay does not prejudice the plaintiff." *Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997). If the district court denies summary judgment on qualified immunity, the order is immediately appealable as a collateral order if the judgment is made as a matter of law and "the issue appealed concerns whether the facts demonstrated a violation of clearly established law." *Rodis v. City & Cty. of San Francisco*, 558 F.3d 964, 968 (9th Cir. 2009) (citation omitted). If the district court denies summary judgment on qualified immunity, the right of appeal is limited to the purely legal question of whether, assuming the factually supported version of events offered by the plaintiffs is correct, the district court erred by denying qualified immunity. *Pauluk v. Savage*, 836 F.3d 1117, 1120–21 (9th Cir. 2016).

Here, Officer West moved for summary judgment on grounds of qualified immunity. The district court denied the motion, because the evidence, viewed in the light most favorable to Lam, demonstrated a constitutional violation of clearly established law. Officer West did not appeal this decision. Instead, in the pretrial conference statement, Officer West acknowledged the existence of disputed material facts and stated that there was a legal issue in dispute as to "[w]hether Officer West is entitled to qualified immunity, and the process that may be used at trial to make that determination." In her trial brief, Officer West requested the jury make factual findings on the disputed issues, but Officer West did not propose special interrogatories to the district court. The case proceeded to trial.

"When a qualified immunity claim cannot be resolved before trial due to a factual conflict, it is a litigant's responsibility to preserve the legal issue for determination after the jury resolves the factual conflict." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009). To preserve the determination of qualified immunity, a defendant must make a motion for judgment as a matter of law under Rule 50(a). *Id.* The Rule 50(a) motion may be filed "at any time before the case is submitted to the jury." *Id.* at 1081. If the district court denies the Rule 50(a) motion, the defendant must then renew the motion for judgment as a matter of law under Rule 50(b) to preserve the qualified immunity defense. *Id.* However, a "failure to file a Rule 50(a) motion precludes consideration of a Rule 50(b) motion for judgment as a mater of law." *Id.* at 1083. Once there has been a trial, the filing of a motion for summary judgment or raising the defense in a pre-trial submission is not sufficient to avoid a waiver. *Id.* at 1082.

Officer West did not file a Rule 50(a) motion for judgment as a matter of law before the case was submitted to the jury, nor did Officer West file a renewed motion for judgment as a matter of law pursuant to Rule 50(b) after the verdict was rendered. Thus, Officer West never provided the district court an opportunity to rule on the question of whether, on the facts established at trial, she was entitled to qualified immunity. Therefore, Officer West did not preserve her post-trial assertion of qualified immunity for appeal. Following *Tortu*, if an officer has forfeited her qualified immunity defense by failing to follow proscribed procedures for the preservation of the defense, we should not consider it for the first time on appeal. *See id.* at 1085 n.9 ("There is no authority that [qualified immunity] could be revived as a ground for a new trial under Rule 59.").

Officer West argues that the district court's failure to give special interrogatories to the jury deprived her of a qualified immunity determination. That argument is without merit. Without properly preserving qualified immunity and providing the district court a forum to rule on the defense, it was Officer West, not the district court, who precluded a qualified immunity determination. Officer West also contends that, by requesting that the district court give special interrogatories to the jury, she properly raised qualified

immunity.[5] Our precedent, as explained above, forecloses this argument.

Finally, Officer West argues the district court abused its discretion, because it applied the incorrect substantive law in explaining why it did not give special interrogatories to the jury. Because the district court did not address the merits of the qualified immunity determination, it did not, as Officer West argues, "appl[y] the incorrect substantive law." The district court recognized that the merits of the qualified immunity defense were foreclosed by Officer West's failure to preserve the defense by filing Rule 50 motions.

## IV.

Officer West makes a cursory reference to the Bane Act in the opening brief, requesting that "the Court . . . reverse the judgment . . . regarding the Bane Act (which is dependent on constitutional liability)." Because Officer West failed to provide any argument or authority to support this claim on appeal, we do not consider it. *See United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in

---

[5] In Officer West's trial brief, she wrote, "Should the jury respond to interrogatories and find that the incident occurred as described by Officer West, Defendants would then be able to move under Rule 50 for qualified immunity on the part of the officer." This sequence is wrong. A party must file a Rule 50(a) motion at any time *before* the case is submitted to the jury. If Officer West waited until *after* the case was submitted to the jury and after the jury resolved factual disputes in her favor, the motion would have been untimely, and would have precluded a Rule 50(b) motion. *See Tortu*, 556 F.3d at 1083.

passing and not supported by citations to the record or to case authority are generally deemed waived.").

**AFFIRMED.**

# United States Court of Appeals for the Ninth Circuit

## Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

## Information Regarding Judgment and Post-Judgment Proceedings

### Judgment
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36.  Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

### Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise.  To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

### Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)
### Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)

(1)   A.   **Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ▶ A material point of fact or law was overlooked in the decision;
  - ▶ A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ▶ An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

   B.   **Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

> ▶ Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
> ▶ The proceeding involves a question of exceptional importance; or
> ▶ The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)    Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)    Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist.  The points to be raised must be stated clearly.

**(4)    Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system.  No paper copies are required unless the Court orders otherwise.  If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper.  No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

## Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

## Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published <u>opinion</u>, please send a letter **in writing within 10 days** to:
  - ▶ Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Jean Green, Senior Publications Coordinator);
  - ▶ and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

**Form 10. Bill of Costs** ....................................................................................................*(Rev. 12-1-09)*

## United States Court of Appeals for the Ninth Circuit

## BILL OF COSTS

This form is available as a fillable version at:
http://cdn.ca9.uscourts.gov/datastore/uploads/forms/Form%2010%20-%20Bill%20of%20Costs.pdf.

**Note:** If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with 9th Circuit Rule 39-1. A late bill of costs must be accompanied by a motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and 9th Circuit Rule 39-1 when preparing your bill of costs.

[                    ]   v.   [                        ]   9th Cir. No. [            ]

The Clerk is requested to tax the following costs against: [                        ]

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, 9th Cir. R. 39-1 | REQUESTED (Each Column Must Be Completed) | | | | ALLOWED (To Be Completed by the Clerk) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST |
| **Excerpt of Record** | | | $ | $ | | | $ | $ |
| **Opening Brief** | | | $ | $ | | | $ | $ |
| **Answering Brief** | | | $ | $ | | | $ | $ |
| **Reply Brief** | | | $ | $ | | | $ | $ |
| **Other**** | | | $ | $ | | | $ | $ |
| | | | **TOTAL:** | $ | | | **TOTAL:** | $ |

\* *Costs per page*: May not exceed .10 or actual cost, whichever is less. 9th Circuit Rule 39-1.

\*\* *Other*: Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to 9th Circuit Rule 39-1. Additional items without such supporting statements will not be considered.

Attorneys' fees **cannot** be requested on this form.

*Continue to next page*

**Form 10. Bill of Costs -** *Continued*

I, [　　　　　　　　　　　] , swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature [　　　　　　　　　　　]

("s/" plus attorney's name if submitted electronically)

Date [　　　　　　]

Name of Counsel: [　　　　　　　　　　　]

Attorney for: [　　　　　　　　　　　　　　　　　　]

*(To Be Completed by the Clerk)*

Date [　　　　　　　　]    Costs are taxed in the amount of $ [　　　　　　]

Clerk of Court

By: [　　　　　　　　　] , Deputy Clerk